UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEW JERSEY CARPENTERS FUNDS, NEW JERSEY REGIONAL COUNCIL OF CARPENTERS, ZAZZALI, FAGELLA, NOWAK, KLEINBAUM & FRIEDMAN, P.C.,**<br><br>    Petitioners,<br><br>v.<br><br>**ENGINEERED FRAMING SYSTEMS, EFS OF NEW JERSEY,**<br><br>    Respondents. | MASTER FILE: 07-CV-3824 (WJM)<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

Edward H. O'Hare
Zazzali, Fagella, Nowak, Kleinbaum & Friedman, PC
One Riverfront Plaza
Newark, NJ 07102-5410

(*Counsel for Petitioners*)

Ronald L. Tobia
Tobia & Sorger Esqs., LLC
500 Supor Boulevard
Harrison, NJ 07029

(*Counsel for Respondents*)

**WILLIAM J. MARTINI, U.S.D.J.:**

　　Petitioners move to confirm an arbitration award against Respondents, which an arbitrator entered after finding that Respondents breached a collective bargaining agreement with Petitioners by failing to make certain required employee benefit

contributions. Respondents oppose this motion, arguing that Respondent Engineered Framing Systems Structures, Inc. was not a party to the collective bargaining agreement and thus not bound by its arbitration provisions. Respondents also argue that the arbitrator's procedures were not sufficient. Finally, Respondents argue that the arbitrator lacked sufficient evidence for its award. This Court agrees that Engineered Framing Systems Structures, Inc. was not a party to the collective bargaining agreement and holds that the arbitrator had no other basis to assert arbitration jurisdiction over that Respondent. However, this Court finds that the arbitrator's procedure was fair and that its award had a rational basis sufficient to warrant confirmation. Accordingly, this Court **AFFIRMS** the award in its entirety except as against Respondent Engineered Framing Systems Structures, Inc.

**I.     FACTS**

At the heart of this case lies a collective bargaining agreement. The employer parties to this agreement are Respondents Engineered Framing Systems ("EFS") and Engineered Framing Systems of New Jersey ("EFSNJ"). (Cross Petition to Vacate, Modify or Remand an Arbitration Award ¶ 8.) Each employer entered into a collective bargaining agreement with Petitioner New Jersey Regional Council of Carpenters ("NJRCC"), a union. (Cross Petition ¶ 8.) Under the collective bargaining agreement, EFS and EFSNJ were obligated to make certain contributions to the New Jersey Carpenters Funds ("Funds") on behalf of NJRCC members whom EFS and EFSNJ

employed. (Affidavit of Edward H. O'Hare, Ex. B, Article XXXI.)

The collective bargaining agreement provided for the arbitration of disputes that could not be settled by the parties. Specifically, it provided for the arbitration of "[a]ll questions or grievances involving the interpretation and application of this Agreement." (Ex. B, Article XVIII.) Also, the short form agreement between the parties accompanying the collective bargaining agreement provided that the arbitrator "shall herein decide . . . all matters concerning procedural or substantive arbitrability." (O'Hare Affidavit, Ex. A.)

This dispute arose when the Funds determined that EFS and EFSNJ were delinquent in their required contributions. (Letter Brief Opposing Cross Petition to Vacate 3.) Pursuant to the collective bargaining agreement, the Funds scheduled an arbitration for April 12, 2007, seeking to recover these delinquent contributions. (Letter Brief Opposing Cross Petition 3.)

But the Funds sought an award not only from EFS and EFSNJ, but also from a third entity, Engineered Framing Systems Structures, Inc. ("Structures"). (Petition to Confirm Arbitration Awards, Ex. B.) Although the relationship between Structures and the other two Respondents, EFS and EFSNJ, is not clear, the parties appear to agree that they have different shareholders and that Structures does not directly employ any union laborers. (Letter Brief in Support of Cross Petition 12; Letter Brief Opposing Cross Petition 2.)

At the arbitration, Petitioners produced evidence of Respondents' delinquency. Robert Laufenberg, a Funds collection representative, presented shop steward reports, paystubs, and remittance reports showing discrepancies between the contributions that Respondents were required to make and their actual contributions.[1]  (Affidavit of Robert Laufenberg ¶¶ 2, 3.)  He also prepared a summary of the owed contributions, showing that Respondents owed the Funds $361,852.90.  ( Laufenberg Affidavit ¶ 3 & Ex. B.) Laufenberg testified during the arbitration hearing that when determining how much Respondents had contributed, Petitioners had considered contributions made on Respondents' behalf from two other sources: an escrow account held by Tobia & Sorger (the law firm representing Respondents) and AJD Construction, Inc. (a general contracting company).[2]  (Laufenberg Affidavit ¶ 6.)

In contrast, the three Respondents participated in the arbitration less diligently. Before the arbitration began, Respondents' lawyer requested an adjournment to have additional time to prepare.  (O'Hare Affidavit, Exs. C, D, E.)  Over Petitioners' objection, the arbitrator granted Respondents' request and rescheduled the arbitration for May 31,

---

[1]The parties do not explain what these documents are or precisely how they may be used to determine whether Respondents fulfilled their contribution obligations.  It appears that the shop steward reports are reports prepared by a NJRCC union member working for EFS or EFSNJ documenting the number of hours and wage amounts each NJRCC union member accrued during a discrete period of time.  The remittance reports appear to be reports prepared by EFS or EFSNJ documenting how much they contributed to the Funds on behalf of each NJRCC member during a discrete period of time.

[2]The parties do not explain and it is not clear how AJD Construction is related to the parties or why it made contributions to the Funds on the Respondents' behalf.

2007.  (O'Hare Affidavit Ex. F.)  At the arbitration, Respondents' lawyer did not produce any testimony or documentation.  (Laufenberg Affidavit ¶ 8.)  When the Funds submitted evidence supporting a $361,852.90 award, Respondents' lawyer again requested that Respondents be permitted more time to produce testimony and documents.  (Laufenberg Affidavit ¶ 10; Letter Brief Opposing Cross Petition 3–4.)  Again over Petitioners' objection, the arbitrator granted Respondents' request and held another arbitration, on June 21, 2007.  (Laufenberg Affidavit ¶ 10; Letter Brief Opposing Cross Petition 3–4.)  But yet again, Respondents failed to provide any testimony or documents disputing Petitioners' alleged award.  (Laufenberg Affidavit ¶ 10.)

Ultimately, the arbitrator awarded Petitioners $316,852.90.  (Petition Ex. B ¶ 1.)  The arbitrator also awarded attorney's fees of $90,463 to Petitioners' law firm, Zazzali, Fagella, Nowak, Kleinbaum & Friedman.  (Ex. B ¶ 2.)

## II.    MOTIONS BEFORE THIS COURT

Upon this arbitration award, the parties have filed the two motions now before this Court.  Petitioners have moved to confirm the arbitration award, and Respondents have cross-moved to vacate the award.

Respondents make four arguments in support of their cross-motion to vacate.  First, Respondents argue that this Court should vacate the award at least with respect to Respondent Structures because Structures was not a signatory to the collective bargaining agreement and thus not bound by its arbitration provision.  (Letter Brief Supporting Cross

5

Petition 4.) Second, Respondents argue that the arbitrator should have given them more time to present evidence that they were not delinquent in their contributions to the Funds. (Letter Brief Supporting Cross Petition 2.) Third, Respondents argue that the arbitrator based its award on shop steward reports, which was improper because, Respondents argue, these reports "were never entered into evidence at the Hearing." (Letter Brief Supporting Cross Petition 3.) Fourth, and finally, Respondents argue that the arbitrator's award was ultimately inaccurate, and Respondents offer evidence rebutting the arbitrator's calculations. (Letter Brief Supporting Cross Petition 3–4.)

### III. DISCUSSION

#### A. The Award Against Respondent Structures

Respondents argue that the arbitration award cannot bind Respondent Structures because Structures was not a signatory to the collective bargaining agreement and thus was not bound by its arbitration provisions. This Court agrees.

The cardinal principle of arbitration is that it is a matter of contract. In re Cont'l Airlines, Inc., 484 F.3d 173, 182 (3d Cir. 2007). Parties may usually not be forced to submit to arbitration unless they have so agreed. Id. The parties and this Court agree that Structures did not sign the collective bargaining agreement.

However, there are situations in which a party that has not agreed to arbitrate a dispute may still be compelled to arbitrate. Specifically, there are five theories for binding non-signatories to arbitration agreements: (1) incorporation by reference, (2)

6

assumption, (3) agency, (4) veil-piercing or alter-ego, and (5) estoppel. Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). Petitioners argue that Structures is the alter ego of the other two Respondents and that it should thus be bound by the arbitration provision in the collective bargaining agreement. (Letter Brief Opposing Cross Motion 2 n.1, 9–10.) Respondents contest this and argue that Structures is a completely separate corporation. (Letter Brief in Support of Cross Motion 12.)

As an initial matter, this Court wishes to clarify for the parties that it—and not the arbitrator—must decide whether Structures is the alter ego of the other Respondents and thus bound by the arbitration agreement. This conclusion has been affirmed by many courts. See Eichleay Corp. v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, 944 F.2d 1047, 1059 n.12 (3d Cir. 1991); Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 868 F.2d 573, 576 (3d Cir. 1989); Marciano v. MONY Life Ins. Co., 470 F. Supp. 2d 518, 525–26 & n.12 (E.D. Pa. 2007).

Turning to the question of whether Structures is the alter ego of the other Respondents, it is clear that Petitioners have not demonstrated this. The alter ego doctrine allows a court to pierce the corporate veil to prevent fraud, illegality, or injustice or if recognition of the corporate entity would defeat public policy. Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1069 (3d Cir. 1979). Courts may use the alter ego doctrine to undercut schemes in which a shell corporation's affairs and personnel are a sham to disguise an alter ego corporation's wrongdoing. Kaplan v. First Options of

7

Chi., Inc., 19 F.3d 1503, 1520–21 (3d Cir. 1994). When determining whether one corporation is the alter ego of another for this purpose, courts will consider the existence of many indicators of such a scheme: gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of the officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder. Pearson v. Component Tech. Corp., 247 F.3d 471, 484–85 (3d Cir. 2001).

Here, no such evidence exists. Indeed, as mentioned above, it is unclear what the relationship is between Structures and the other two Respondents. Petitioners do not even attempt to argue on the merits that Structures was an alter ego; rather they merely argue that this Court should defer to the arbitrator's determination (the argument rejected above). (Letter Brief Opposing Cross Petition 8–10.)

Thus, there is no basis for finding that Structures was the alter ego corporation of the other two Respondents. This Court accordingly holds that Structures was not bound by the arbitration provision in the collective bargaining agreement and vacates the arbitrators award insofar as it binds Structures.

    **B.**    **The Arbitrator's Refusal to Grant Respondents More Time to Present Evidence**

Respondents argue that the arbitrator should have given them more time to present evidence demonstrating that they were not delinquent in their benefits contributions. This

Court disagrees.

While arbitration dispenses with many of the formalities of a trial, it still requires a fair procedure. Rosensweig v. Morgan Stanley & Co., 494 F.3d 1328, 1333 (11th Cir. 2007); Sheldon v. Vermonty, 269 F.3d 1202, 1206 (10th Cir. 2001). One particular defect precluding a fair procedure may exist where the arbitrator refused to postpone the hearing upon good cause to allow for the presentation of relevant evidence. See 9 U.S.C. § 10(a)(3).

Here, the arbitrator's refusal to further postpone the hearing did not deny Respondents a fair procedure. As discussed above, the arbitrator had already postponed its proceedings twice to allow Respondents to present evidence, evidencing that the arbitrator acted in good faith. See Al-Haddad Commodities Corp. v. Toepfer Int'l Asia Pte., Ltd., 485 F. Supp. 2d 677, 682 (E.D. Va. 2007) (confirming an arbitration panel's award—in spite of the panel's refusal to postpone the proceedings to allow for the presentation of more evidence—because the refusal was not in bad faith). And each time, Respondents did not present the promised evidence. All arbitration, like litigation, must eventually end, and this may require an arbitrator, like a judge, to sacrifice the presentation of evidence in certain circumstances for the sake of expediency. Thus, the arbitrator's refusal to again delay the proceeding did not deny the Respondents a fair procedure and will not prevent this Court from confirming the arbitrator's award.

    **C.**    **The Arbitrator's Reliance on Reports That Were Not "Entered Into Evidence"**

9

Respondents vaguely argue that the arbitrator improperly relied upon shop steward reports "which were never produced by the Funds and which were never entered into evidence at the Hearing." (Letter Brief Supporting Cross Petition 3.) This Court disagrees.

As explained above, arbitration dispenses with many of the formalities of trial. Rosensweig, 494 F.3d at 1333. Respondents make only the vaguest argument that the arbitrator relied on reports "which were never entered into evidence at the Hearing." (Letter Brief Supporting Cross Petition 3.) But there is no requirement in arbitration that parties formally introduce evidence, in contrast to the requirements for federal trials promulgated in the Federal Rules of Evidence. Thus, the arbitrator's reliance on reports not so introduced will not prevent this Court from confirming the arbitrator's award.

### D. The Arbitrator's Calculation of Damages

In calculating Respondents' delinquencies, the arbitrator examined shop steward reports, paystubs, and remittance reports showing discrepancies between the contributions that Respondents were required to make and their actual contributions. (Laufenberg Affidavit ¶¶ 2, 3.) The arbitrator concluded that Respondents' obligations under the collective bargaining agreement exceeded their actual contributions by $361,852.90. (Petition Ex. B ¶ 1.) The arbitrator accordingly awarded Respondents the difference. (Ex. B ¶ 1.)

Respondents dispute this calculation. Specifically Respondents argue that the

arbitrator's award was "merely conjecture" and that the arbitrator did not have the benefit of evidence showing that third parties had paid Respondents' delinquency on their behalf. (Letter Brief Supporting Cross Petition 2–3.)

Notwithstanding that Respondents failed to present this evidence in a timely fashion to the arbitrator—as they admit (Letter Brief Supporting Cross Petition 2–3)—such a miscalculation, even if true, would not prevent this Court from confirming the arbitration award. Where, as here, the parties have agreed that the arbitration award shall be final and binding upon the parties, courts will not exercise judicial review over or review the merits of resulting awards. Monte v. S. Del. County Auth., 335 F.2d 855, 857 (3d Cir. 1964). Courts will only review questions of the arbitrator's jurisdiction over the parties or the arbitration's fundamental fairness, as this Court has done above. This is true even in the face of the arbitrator's factual errors. The Major League Umpires Ass'n v. The Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279–80 (3d Cir. 2004). Indeed, "[w]hen an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding,' does not provide a basis for a reviewing court to refuse to enforce the award." Id. at 279–80 (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001)). Here, as explained above, the arbitrator's procedure was fair, and there is no evidence of dishonesty or bad faith. In such a circumstance, this Court will not review the arbitrator's factual findings, including whether Respondents were delinquent in their benefits

contributions to the Funds and the amount of those delinquencies.

## IV.   CONCLUSION

The arbitrator did not have jurisdiction over Respondent Structures, and the arbitration award is accordingly **VACATED** as to that Respondent only.  With respect to the remaining two Respondents, EFS and EFSNJ, the arbitrator's procedure was fair and free from any evidence of bad faith.  Accordingly, the arbitration award with respect to those two Respondents is **AFFIRMED**.  An appropriate Order accompanies this Opinion.


s/ William J. Martini
William J. Martini, U.S.D.J.